UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| CUMMINGS CUMMINGS; AND HILARY HEGENER;<br><br>    Plaintiffs,<br><br>vs.<br><br>WORKTAP, INC.; MARK ROBINSON; AND DAVID LEE;<br><br>    Defendants. | Case No: C 17-6246 SBA<br><br>**ORDER ON CROSS-MOTIONS FOR RELIEF FROM MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON PLAINTIFFS' APPLICATION FOR WRIT OF ATTACHMENT**<br><br>Dkt. 22, 42, 57, 58 |

    The instant diversity jurisdiction breach of contract action arises from a dispute between Plaintiffs Jonathan Cummings ("Cummings") and Hilary Hegener ("Hegener") and Defendants Worktap, Inc. ("Worktap") and its alleged alter egos, Mark Robinson ("Robinson") and David Lee ("Lee"). Plaintiffs allege that Worktap has failed to repay two convertible promissory notes in the amounts of $150,000 and $50,000. After commencing this action, Plaintiffs filed an application for a writ of attachment based on the principal amount of the notes, plus interest and attorney's fees and costs. On referral from this Court, Magistrate Judge Sallie Kim ("the Magistrate") issued a Report and Recommendation ("R&R") in which she recommends granting Plaintiffs' application in the sum of $150,000 based on one note, but not the other. She subsequently issued an order recommending that the Court include $20,876.71 in interest as part of the attachment order.

The parties are presently before the Court on cross-motions seeking relief from the R&R which set forth their respective objections to thereto. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby SUSTAINS IN PART and OVERRULES IN PART Plaintiffs' objections to the Magistrate's recommendations and OVERRULES Worktap's objections in their entirety. Pursuant to Civil Local Rule 7-1(b), the Court resolves the instant objections without a hearing.

## I. BACKGROUND

### A. FACTUAL SUMMARY

Defendant Worktap is a California corporation based in Marin County. 1/25/18 Robinson Decl. ¶ 3, Dkt. 34. Defendant Robinson is the Chief Executive Officer and Secretary of Worktap. Id. Between April 2015 and January 2017, Christopher Cummings ("Christopher") was employed by Worktap as a Senior Vice-President of Finance and Corporate Development. Id. ¶ 6. Christopher is the brother of Plaintiff Cummings. Id.

In 2015, Christopher was in charge of raising capital for Worktap. 1/31/18 Robinson Decl. ¶ 6, Dkt. 41-1. In July 2015, Christopher secured $350,000 in capital from various investors, including $150,000 from Cummings and Hegener. 1/31/18 C. Cummings Decl. ¶¶ 7, 8, Dkt. 38-6. The terms of Cummings' investment were memorialized in a Note Purchase Agreement, which includes a Convertible Promissory Note (collectively "2015 Note"), dated April 13, 2015. Sec. Am. Compl. ("SAC"), Ex. 1 ("2015 Note"), Dkt. 21-1. The 2015 Note specifies an interest rate of 5% per annum and a Maturity Date of April 30, 2016. Id. Christopher finalized and executed the documents utilizing an electronic copy of Robinson's signature, supplied to him by Robinson. 1/31/18 C. Cummings Decl. ¶ 8.

Christopher's fundraising efforts continued through 2016. Id. ¶¶ 13-17. On or about January 27, 2016, Cummings and Hegener invested an additional $50,000 in Worktap. Id. ¶ 17. The investment was memorialized in a Note Purchase Agreement and Convertible Promissory Note (collectively "2016 Note"). SAC Ex. 2. The 2016 Note specifies an

interest rate of 5% per annum and a Maturity Date of January 31, 2017.  Id.  Christopher finalized and executed the documents utilizing an electronic copy of Robinson's signature. Christopher claims that he was authorized to use Robinson's electronic signature to execute investment documents.  1/31/18 C. Cummings Decl. ¶¶ 9-11.

Worktap disputes that the version of the 2016 Note provided to the Court as Exhibit 2 to the SAC accurately reflects Worktap's agreement with Cummings and Hegener. Robinson accuses Christopher of having colluded with Cummings to include more favorable terms in and then fraudulently executing the 2016 Note using his electronic signature.  1/25/18 Robinson Decl. ¶ 18, Dkt. 34.  Among other things, Worktap claims that the Maturity Date for the 2016 Note should have been indicated as July 28, 2018, and that the Maturity Date for the 2015 Note was extended to that date, as well.  R&R at 3.  In addition, Worktap alleges that Christopher and Cummings used the 2016 Note to modify the 2015 Note by providing Plaintiffs with more favorable terms with respect to the conversion discount and conversion price, thereby affording Plaintiffs more advantageous terms to convert their debt to equity.  1/31/18 Robinson Decl. ¶¶ 23-27, Dkt. 41-1.

Worktap claims that, while employed by Worktap, Christopher refused to provide it with a copy of the 2016 Note.  Id. ¶ 10.  It was not until a year later in January 2017, after Christopher was terminated, that Worktap obtained a copy of the 2016 Note and realized that Christopher had included terms to which Worktap had not agreed.  Id. ¶ 8.  Still, Worktap did not notify Cummings about the allegedly fraudulent conduct until June 24, 2017.  1/25/18 Robinson Decl. ¶ 18.  To date, Worktap has not repudiated the 2016 Note, returned the $50,000 investment to Plaintiffs or repaid Plaintiffs the $150,000 due on the 2015 Note.  R&R at 3.

### B. PROCEDURAL HISTORY

Plaintiffs filed their initial Complaint on October 27, 2017, and a First Amended Complaint on December 18, 2017.  Dkt. 1, 18.  Plaintiffs filed their SAC, the operative pleading, on January 5, 2018.  Dkt. 21.  The first and second causes of action are for breach of contract based on the 2015 Note and 2016 Note, respectively.  The third and fourth

causes of action allege alter ego liability as to Robinson and Lee. Defendants answered the SAC and filed a counterclaim against Cummings. Dkt. 26, 28. As to the 2016 Note, the Counterclaim alleges, inter alia, that Cummings and his brother Christopher altered the parties' agreement to give Plaintiffs more favorable discount rates and valuation and conversion terms. Counterclaim ¶ 18, Dkt. 28.

On January 18, 2018, Plaintiffs filed an Ex Parte Application for a Writ of Attachment. Dkt. 22 at 2. The proposed amount of the attachment is $421,343.74, which represents the $200,000 principal owed on both notes, with the balance representing interest and attorney's fees. The Court referred the matter to the Magistrate, who set a briefing schedule and hearing date on the application. Dkt. 25. During the hearing before the Magistrate, Worktap acknowledged that the 2015 Note is valid and that it had received but not yet repaid the $200,000 in principal received from Plaintiffs. R&R at 3. As to the 2015 Note, Worktap claimed that when the parties entered into the 2016 Note, they agreed to extend the repayment deadline on the 2015 Note from April 30, 2016, to July 28, 2018. Id. According to Worktap, the copy of the 2016 Note attached to the pleadings omits the extension because the note was forged by Christopher. Id. At the hearing, the Magistrate directed Plaintiffs "to file a response regarding the allegations of fraudulent signatures on the 2016 note." Dkt. 36. Plaintiffs filed their supplemental brief and a supporting declaration from Christopher on January 31, 2018. Dkt. 37-39.

The Magistrate issued her R&R on February 2, 2018. Dkt. 42. She found that Plaintiffs had established the probable validity of their contract claim as to the 2015 Note, but not the 2016 Note. Id. at 4. She concluded that Worktap had failed to present sufficient evidence to demonstrate that the parties had, in fact, agreed to modify the due date for the 2015 Note. Id. With regard to the 2016 Note, however, the Magistrate found that "Worktap has presented compelling evidence that the 2016 Agreements [i.e., the Convertible Promissory Note and Note Purchase Agreement] may have been forged." Id. Thus, the Magistrate recommended that the Court issue a writ of attachment in the amount of $150,000, based on Plaintiffs' claim pursuant to the 2015 Note only. R&R at 6. She

declined to include any interest or attorneys' fees and costs in the proposed attachment. Id.

Upon reviewing the R&R, Plaintiffs realized that the Magistrate had not reviewed their supplemental brief and declaration, apparently because they had delivered the courtesy copies of their papers to the wrong chambers. Plaintiffs thus filed a motion for reconsideration, asking the Magistrate to review their supplemental filings and to revise her R&R accordingly. Dkt. 43.

On February 6, 2018, the Magistrate issued her order granting in part and denying in part Plaintiffs' motion for reconsideration. Dkt. 46. The Magistrate affirmed her prior conclusion that Christopher had failed to demonstrate that he was authorized to execute the 2016 Note using Robinson's electronic signature. However, the Magistrate modified her recommendation by adding $20,876.71 in interest on the 2015 Note to the amount of the proposed attachment.

Plaintiffs and Worktap have now separately filed motions for relief from the Magistrate's R&R (including her February 6, 2018, Order amending the R&R). Plaintiffs object to the Magistrate's recommendation to deny the proposed attachment as to the 2016 Note and to exclude their attorneys' fees and costs from the attachment. Worktap objects to the Magistrate's recommendation as to the 2015 Note, her recommendation to include interest on the 2015 Note, and her failure to address its argument regarding UCC-1 security interests. The Court discusses these objections, in turn.

## II. <u>LEGAL STANDARD</u>

A party may file specific written objections to the findings and recommendations of a United States Magistrate Judge. 28 U.S.C. § 636(b)(1)(B); N.D. Cal. L.R. 72-3. The district court must review de novo "those portions of the report or specified proposed findings or recommendations to which objection is made." Fed. R. Civ. P 72(b)(1); see Holder v. Holder, 392 F.3d 1009, 1022 (9th Cir. 2004). Factual findings are reviewed for clear error. Quinn v. Robinson, 783 F.2d 776, 791 (9th Cir. 1986). The Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the

magistrate judge." 28 U.S.C. § 636(b)(1). In addition, the Court may consider further evidence or remand the matter to the magistrate judge with instructions. Id.

## III. DISCUSSION

Federal Rule of Civil Procedure 64 "permits state seizure provisions to be used in federal courts ...." Reebok Int'l v. Marnatech Enters., 970 F.2d 552, 558 (9th Cir. 1992). California allows prejudgment attachments under limited circumstances as "a provisional remedy to aid in the collection of a money demand." Kemp Bros. Constr. Inc. v. Titan Elec. Corp., 146 Cal. App. 4th 1474, 1476 (2007). To obtain a right to attach order and writ of attachment, the plaintiff must demonstrate: (1) that the claim on which the attachment is based must be one on which an attachment may be issued; (2) the probable validity of the claim on which the attachment is based; and (3) that the attachment is not sought for a purpose other than the recovery on the claim on which the attachment is based. Cal. Code Civ. P. § 484.090(a). It is within the discretion of the court to allow the pretrial attachment of the estimated amount of costs and allowable attorney's fees. Id. § 482.110. All property within California held by a corporation is subject to attachment if there is a statutory method of levy for the property. Id. § 487.010(a).

"A claim has 'probable validity' where it is more likely than not that the plaintiff will obtain a judgment against the defendant on that claim." Cal. Civ. Proc. Code § 481.190. To establish the probability of succeeding on its claim, a plaintiff must include "an affidavit or declaration showing that the applicant, on the facts presented, would be entitled to a judgment on the claim upon which the attachment is based." Lydig Constr., Inc. v. Martinez Steel Corp., 234 Cal. App. 4th 937, 944 (2015). "The declarations in the moving papers must contain evidentiary facts, stated with particularity, and based on actual personal knowledge with all documentary evidence properly identified and authenticated." Hobbs v. Weiss, 73 Cal. App. 4th 76, 79-80 (1999).

An attachment order is "a harsh remedy because it causes the defendant to lose control of his property before the plaintiff's claim is adjudicated." Martin v. Aboyan, 148 Cal. App. 3d 826, 831 (1983). Therefore, the requirements for the issuance of a writ of

attachment are strictly construed against the applicant. Pos-A-Traction, Inc. v. Kelly-Springfield Tire Co., 112 F. Supp. 2d 1178, 1181 (C.D. Cal. 2000) ("Attachment is a purely statutory remedy, which is subject to strict construction."). The burden is on the applicant to establish each element necessary for an attachment order by a preponderance of the evidence. Loeb & Loeb v. Beverly Glen Music, Inc., 166 Cal. App. 3d 1110, 1116 (1985).

### A. PLAINTIFFS' OBJECTIONS

Plaintiffs object to two of the Magistrate's recommendations in the R&R: (1) the denial of Plaintiffs' request of a writ of attachment based on the 2016 Note, plus interest; and (2) the failure to include legal fees and costs of $195,521.82 in the proposed writ. The first objection has merit; the second objection does not.

#### 1. The 2016 Note

The Magistrate found that Plaintiffs failed to demonstrate the probable validity of their second claim for breach of contract, which is based on Worktap's failure to repay the 2016 Note by the Maturity Date of January 31, 2017. SAC ¶¶ 89-93. "[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." Oasis West Realty, LLC v. Goldman, 51 Cal.4th 811, 821 (2001). When a writ of attachment is sought in connection with a contract claim, "it is not enough for the plaintiff to make out a prima facie case for breach of contract; rather, the plaintiff must also show that the defenses raised are 'less than fifty percent likely to succeed.'" Blastrac, N.A. v. Concrete Sols. & Supply, 678 F. Supp. 2d 1001, 1005 (C.D. Cal. 2010). If an applicant fails to rebut a factually-supported defense that would defeat its claims, the applicant has not established probable validity. Id.

At issue here is whether it is more likely than not that Plaintiffs will be able to recover on the 2016 Note. As noted, Worktap claims that the 2016 Note is unenforceable because Christopher altered its terms and forged Robinson's signature on investment documents. In response, Plaintiffs counter that Christopher was fully authorized to execute documents relating to the investment rounds in 2015 and 2016, including the 2016 Note.

Alternatively, Worktap argues that even if the 2016 Note were forged, Worktap ratified Christopher's allegedly fraudulent conduct by retaining Plaintiffs' $50,000 investment and failing to take any action to repudiate the note. As to Plaintiffs' first point, the Magistrate opined that they had failed to establish the probable validity of their claim, based on "compelling evidence" that the 2016 Note "may have been forged." R&R at 5.[1] The Magistrate did not, however, address Plaintiffs' backup argument that Worktap, by its conduct, impliedly ratified any fraudulent conduct with respect to the note. Plaintiffs contend that the Magistrate's failure to analyze their ratification argument warrants relief from her R&R. The Court agrees.[2]

Under California law, a principal may ratify the forgery of its agent where the principal has accepted the benefits of an agreement. See Rakestraw v. Rodrigues, 8 Cal. 3d 67, 73-74 (1972) (party whose signature was forged on promissory note ratified note by accepting benefits of agreement after learning of forgery); Le Clercq v. Michael, 88 Cal. App. 2d 700, 702 (1948) ("If a person retains the benefits of a contract and continues to treat it as binding he will be deemed to have waived any fraud and to have elected to affirm the contract."). Ratification may be implied if the evidence "convincingly shows the intention of the principal to adopt or approve the [wrongful] act." StreetScenes v. ITC Entm't Grp., Inc., 103 Cal. App. 4th 233, 242 (2002). "[W]here an agent is authorized to do an act, and he transcends his authority, it is the duty of the principal to repudiate the act

---

[1] The Court disagrees that there is "compelling evidence" that the 2016 Note was forged. Upon reviewing supplemental papers filed by Plaintiffs, the Magistrate found that Christopher's declaration showed only that he was authorized to use Robinson's signature on the 2015 investments documents, but not the 2016 Note. Dkt. 46 at 2. However, Christopher clearly states in his declaration that he was broadly authorized to utilize Robinson's signature on subsequent investment documents, including the 2016 Note. 1/31/18 C. Cumming Decl. ¶¶ 7-17. Given the dispute over the scope of Christopher's authorization, the Court is not in a position to determine, at this juncture, whether Christopher's alleged forgery precludes Plaintiffs from establishing the probable validity of their breach of contract claim.

[2] Defendants posit that the Magistrate rightfully omitted discussing the issue of ratification because Plaintiffs inappropriately raised the issue for the first time in their supplemental brief. Defs.' Opp'n at 2. Not so. Plaintiffs presented their ratification argument in direct response to the Magistrate's order for supplemental briefing. Dkt. 36.

as soon as he is fully informed of what has been thus done in his name, ... [or] else he will be bound by the act as having ratified it by implication." Id. (brackets in orig.). Ratification is a question of fact, and the burden of proving ratification is on the party claiming its existence. Id.

Based on the limited record presented, the Court is persuaded that Plaintiffs have made a sufficient showing that Defendants ratified any alleged misconduct involving the 2016 Note. There is no dispute that Plaintiffs tendered their $50,000 investment to Worktap in January 2016. 1/18/18 J. Cummings Decl. ¶ 5, Dkt. 22-2. Despite allegedly learning of the fraudulent conduct a year later in January 2017, Worktap admittedly has not returned any of the investment proceeds to Plaintiffs or repudiated the agreement. R&R at 3. Worktap avers that it "immediately took action to try to ameliorate the harm caused by Plaintiffs' brother's forged note with problematic terms." 4/4/18 Robinson Decl. ¶ 6, Dkt. 73-1. That response misses the mark. The salient question for purposes of ratification is whether Worktap repudiated Christopher's alleged fraud, not whether Worktap sought to mitigate the harm caused by his actions. See StreetScenes, 103 Cal.App.4th 233, 242-243 (where a principal had to have noticed agent's unauthorized conduct, the principal's failure to repudiate agent's acts provided evidence of ratification).[3]

In sum, Plaintiffs have made a sufficient showing of probable validity as to their second claim for breach of contract. Although Worktap claims that the 2016 Note was forged by Christopher and includes terms to which it did not agree, there is evidence that Worktap ratified any alleged misconduct by retaining the $50,000 in investment proceeds and failing to repudiate the 2016 Agreements. The Court is therefore persuaded that Worktap has a "less than fifty percent [chance]" of demonstrating that the 2016 Note is invalidated as a result of Christopher and Cumming's allegedly fraudulent conduct. See

---

[3] Curiously, despite ostensibly learning of Christopher's purported collusion with Cummings in January 2017, Worktap did not notify Plaintiffs of the fraud until June 2017. 1/25/18 Robison Decl. ¶ 18. Moreover, Worktap provides no information regarding the reason it contacted them or what action, if any, Worktap intended to take with respect to the allegedly forged note.

Blastrac, N.A., 678 F. Supp. 2d at 1005. Accordingly, a writ of attachment in the amount of $50,000, plus interest in the amount of $4,845.21, is therefore appropriate.

### 2. Legal Fees and Costs

California law grants the Court discretion to include "an estimated amount for costs and allowable attorney's fees" in a writ of attachment. Cal. Civ. Proc. Code § 482.110(b). Both the 2015 Note and 2016 Note include a provision entitling Plaintiffs to recover their fees in an action to collect payment. See 2015 Note § 11; 2016 Note § 12. Based on those provisions, Plaintiffs' application for writ of attachment seeks to include $195,821.82 in the attachment. That sum is based on accrued fees and costs in the amount of $82,521.82 and anticipated future fees and costs of $113,000. Kaplan Decl. ¶¶ 15-16, Dkt. 22-3.

The Magistrate declined to include fees and costs in the proposed attachment on the grounds that she had found probable validity only as to the 2015 Note, and could not discern the amount of fees specifically attributable to that note. R&R at 6. In light of the Court's conclusion that Plaintiffs have demonstrated the probable validity of their contract claims as to *both* notes, the Magistrate's concerns are now moot. Nevertheless, the Court finds that Plaintiffs' request is deficient. With regard to their accrued fees, Plaintiffs' counsel merely states that "[t]he attorneys' fees and costs that the Cummings Family has incurred through December 31, 2017 in connection with this action total $82,521.82." Kaplan Decl. ¶ 15. Plaintiffs fail to provide the requisite documentary support for this assertion. See Hobbs, 73 Cal. App. 4th at 79-80. Moreover, that sum appears unreasonably high, given that the only proceedings that have transpired in this action pertain to the instant application for writ of attachment. Plaintiffs have likewise failed to substantiate their conclusory claim that they will incur an additional $113,000 litigating this case. The Court therefore exercises its discretion and declines to include $195,821.82 in fees and costs in the attachment, as requested by Plaintiffs.

### B. WORKTAP'S OBJECTIONS

Worktap objects to the Magistrate's recommendation to grant a writ of attachment in the sum of $150,000 based on the 2015 Note, and her subsequent recommendation to

include $20,876.71 in interest on the 2015 Note.  Def.'s Mot. at 1.  In addition, Worktap complains that the Magistrate did not address its request for a "reasonable amount of time" to notify UCC-1 lienholders of Plaintiffs' request for a writ of attachment.  None of these contentions has merit.

### 1. The 2015 Note

In her R&R, the Magistrate found that Plaintiffs had demonstrated the probable validity of their first claim for breach of contract based on the failure to repay the 2015 Note.  R&R at 3-4.  She noted that: "Worktap concedes that the amount [of $150,000] was loaned; the express terms of the 2015 Agreements show that the Maturity Date passed; and Worktap concedes that it has not repaid Plaintiffs."  Id. at 3.  At the motion hearing before the Magistrate, Worktap argued that the Maturity Date was extended to July 28, 2018, but due to Christopher's alleged acts of forgery, said modification was not actually reflected in the 2016 Note.  Id.  The Magistrate rejected that claim, finding, inter alia, that Worktap had failed to adduce any evidence that the parties had, in fact, agreed to extend the Maturity Date for the 2015 Note.  Id. at 4.

Worktap contends that the Magistrate erred in failing to consider the "impact" of Christopher's alleged forgery of the 2016 Note on the 2015 Note.  Def.'s Mot. at 2.  According to Worktap, the 2016 Note purported to retroactively modify certain terms of the 2015 Note pertaining to the conversion discount and conversion price.  Defs.' Mot. at 3 (citing 1/31/18 Robinson Decl. ¶¶ 23-27, Dkt. 41-1).  Worktap asserts that it would "never" have agreed to provide Plaintiffs with more favorable terms in the 2015 Note "without a corresponding extension on the maturity date."  1/31/18 Robinson Decl. ¶ 23.  These modifications, Worktap argues, relieve it of any further obligation to perform under the 2015 Note, including the obligation to repay the $150,000 debt.  Defs.' Mot. at 2-3.  As support, Worktap cites California Civil Code § 1700, which provides as follows: "The intentional destruction, cancellation, or material alteration of a written contract, by a party entitled to any benefit under it, or with his consent, extinguishes all the executory obligations of the contract in his favor, against parties who do not consent to the act."  In

other words, Worktap contends that by operation of § 1700 it is excused from its obligation to repay its $150,000 debt to Plaintiffs.

As a threshold matter, the Court notes that Worktap failed to raise this argument before the Magistrate. As such, this Court has no obligation to consider it. See Marshall v. Chater, 75 F.3d 1421, 1426-27 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived."); see also United States v. Howell, 231 F.3d 615, 621 (9th Cir. 2000) (holding that, in reviewing objections to a magistrate judge's report and recommendation, the district court may but it is not required to consider evidence that was not presented to the magistrate judge). But even if Worktap had previously made this argument, the Court finds it unavailing.

By its terms, § 1700 extinguishes those obligations that favor the party who intentionally modified the agreement. Here, the contract terms allegedly altered by Plaintiffs in their favor pertain to the conversion discount and the conversion price. 1/31/18 Robinson Decl. ¶ 21. Thus, at most, § 1700 would extinguish Worktap's obligation to provide the more favorable discount and conversion terms to Plaintiffs. Nothing in § 1700 supports the conclusion that *all* obligations under the 2015 Note—including Worktap's independent obligation to repay Plaintiffs $150,000 (in the event they do not convert their debt to equity)—are excused. To conclude otherwise would contravene the rule that statutes should be strictly construed to avoid forfeitures. See Donnellan v. City of Novato, 86 Cal. App. 4th 1097, 1103 (2001). The Court therefore finds no error with respect to the Magistrate's recommendation to grant a writ of attachment in the sum of $150,000, based on the 2015 Note.

### 2. Interest on the 2015 Note

Worktap contends that the Magistrate erred in including interest on the 2015 Note to the proposed attachment order. In her initial R&R, the Magistrate declined to include any amount of interest in the proposed attachment because Plaintiffs' motion had combined the interest amounts owed for both Notes while the Court had only granted an attachment based on the 2015 Note. R&R at 6. As noted, Plaintiffs realized upon reviewing the R&R that

the Magistrate had not reviewed the supplemental brief and supporting declaration filed in response to the Magistrate's order to address the allegations of "fraudulent signatures on the 2016 [N]ote." Dkt. 36. As a result, Plaintiffs thereafter filed a motion for reconsideration, requesting that the Magistrate reconsider her R&R in light of their supplemental papers. Dkt. 43. In support of the motion, Plaintiffs included the declaration of their counsel Stuart Kaplan. Dkt. 43, 43-1. One paragraph of that declaration contains a calculation of the interest accrued as to the 2015 Note. Kaplan Decl. ¶ 12, Dkt. 43-1.[4]

In its motion, Worktap contends the Magistrate erred in considering the interest calculation provided by Plaintiffs in the declaration filed in support of their motion for reconsideration. They point out that the Magistrate only permitted supplemental briefing on the forgery issue, and that the sole basis for reconsideration was the Magistrate's failure to consider that briefing prior to issuing her R&R. Worktap thus complains that it was improper for: (1) Plaintiffs to have included the interest calculation in the declaration filed in support of the motion for reconsideration; and (2) the Magistrate to have relied on such information without first affording Worktap an opportunity to respond.

The Court agrees that, in light of the limited scope of supplemental briefing requested by the Magistrate, it was inappropriate for Plaintiffs to have included the aforementioned calculations. Nevertheless, Plaintiffs' conduct did not unfairly prejudice Worktap. The purportedly "new" information provided by Plaintiffs in connection with their motion for reconsideration was previously presented to the Court when Plaintiffs initially filed their application for a writ of attachment on January 18, 2018. See 1/18/18 J. Cummings Decl. ¶ 10, Dkt. 22-2. As such, the Magistrate already had the information needed to independently calculate the interest: i.e., the principal amount, the interest rate of 5%, and the number of days that had elapsed since the Note's execution. Accordingly, the

---

[4] Paragraph 12 of the Kaplan Declaration states: "In terms of the five percent (5%) contractual interest expressly due under the Notes as of January 18, 2018, the date in which Plaintiffs moved for their ex parte application for a right to attach order and writ of attachment against Defendant Worktap, Inc., which totals $25,821.92: (i) $20,876.71 of that interest has accrued in connection with the 2015 Note; and (ii) $4,945.21 of that interest has accrued in connection with the 2016 Note."

Court rejects Worktap's contention that the Magistrate erred in relying on newly-presented information in recommending that the attachment include accrued interest on the 2015 Note.

### 3. UCC Interests

Finally, Worktap contends that the Magistrate erred in failing to address "the evidence submitted establishing that Worktap's assets are the subject of pre-existing perfected UCC-1 security interests." Def.'s Mot. at 4. The precise evidence to which Worktap is referring is unclear. In its supplemental brief, Worktap stated that "[it] has notified and is in the process of notifying its investors about Cummings's attempt to attach its assets as Worktap's assets are the subject of pre-existing perfected UCC-1 security interests," and therefore, the Magistrate should afford Worktap "a reasonable amount of time" for interest holders to respond prior to imposition of any attachment. Dkt. 41 at 6 (citing 1/31/18 Robinson Decl. ¶¶ 29, 30).

The Magistrate did not address Worktap's request for time to notify UCC-1 security interest holders in either her R&R or subsequent order on Plaintiffs' motion for reconsideration. Nevertheless, the lack of such discussion is of little moment. Worktap's request was germane to the timing of the attachment, not whether the Court should grant an attachment in the first instance. Moreover, Worktap has since notified its UCC-1 security interest holders of the proposed attachment. 4/4/18 Robinson Decl. ¶ 10, Dkt. 73-1. Notably, the Court has, to date, received no response from any of them regarding the proposed attachment.

## IV. CONCLUSION

For the reasons set forth above,

IT IS HEREBY ORDERED THAT:

1. Plaintiffs' Motion for Relief from Nondispositive Pretrial Order of Magistrate Judge Regarding Application for Writ of Attachment is GRANTED IN PART and DENIED IN PART. The Court SUSTAINS Plaintiffs' objection to the R&R with respect to the 2016 Note and finds that Plaintiffs are entitled to an attachment in the amount of

$50,000 plus $4,845.21 in interest.  The Court OVERRULES Plaintiffs' objection to the R&R with respect to their request to include attorney's fees and costs in the writ of attachment.

2. Worktap Technologies, Inc.'s Motion for Relief from Nondispositive Pretrial Order of Magistrate Judge, or Alternatively, Motion for De Novo Determination of Dispositive Matter Referred to Magistrate Judge is DENIED.  All of Worktap's objections are OVERRULED.

3. The Magistrate's R&R, as modified by her Order of February 6, 2018, is ACCEPTED IN PART and REJECTED IN PART, as set forth above.

4. Plaintiffs' application for a right to attach order and writ of attachment against Defendant is GRANTED in the amount of $225,721.92.  Said amount is based $150,000 in principal plus $20,876.71 in interest on the 2015 Note, and $50,000 in principal plus $4,845.21 in interest on the 2016 Note.

IT IS SO ORDERED.

Dated:  4/19/18

*Saundra B Armstrong*
SAUNDRA BROWN ARMSTRONG
Senior United States District Judge